# EXHIBIT B



**E-Notice**

2017-L-001283

CALENDAR: Y

To: LITTLER MENDELSON PC
jschilling@littler.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**SARA  MANOR vs. COPART, INC.**
**2017-L-001283**

The transmission was received on 03/31/2017 at 4:03 PM and was ACCEPTED with
the Clerk of the Circuit Court of Cook County on 03/31/2017 at 4:10 PM.

**PROOF OF SERVICE (Proof of Service of Summons and complaint on opposing counsel.)**

Filer's Email:     rvanosdol@dimontelaw.com
Filer's Fax:       (847) 698-9623
Notice Date:       3/31/2017 4:10:10 PM
Total Pages:       2

**DOROTHY BROWN**
**CLERK OF THE CIRCUIT COURT**
COOK COUNTY
RICHARD J. DALEY CENTER, ROOM 1001
CHICAGO, IL 60602

(312) 603-5031
courtclerk@cookcountycourt.com

ELECTRONICALLY FILED
3/31/2017 4:03 PM
2017-L-001283
CALENDAR: Y
PAGE 1 of 2
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| SARA MANOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 2017-L-001283 |
| v. | ) | |
| | ) | |
| COPART, INC., and | ) | |
| COPART OF CONNECTICUT, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

TO:  Jennifer Schilling
     Littler Mendelson PC
     321 North Clark Street
     Suite 1000
     Chicago, IL 60654

The undersigned hereby certifies that by 5:00 p.m. on **March 20, 2017,** he served opposing counsel as listed above, Via E-Mail, Certified, Return Receipt US Mail, by depositing deposited in the U.S. Mail, 216 West Higgins Road, Park Ridge, Illinois, 60068, in an envelope addressed to the individual listed above, with proper postage affixed to said envelope, and Via Messenger, the following documents:

1.  **Alias Summons;**
2.  **Copy of First Amended Complaint;**
3.  **Interrogatories; and,**
4.  **Request to Produce.**

Ryan R. Van Osdol

Margherita M. Albarello
Ryan R. Van Osdol
DiMonte & Lizak, LLC
216 W. Higgins Rd.
Park Ridge, IL 60068
Tel.: 847-698-9600
Atty. No. 02741
rvanosdol@dimontelaw.com

## Mary Sabovic

| | |
|---|---|
| **From:** | Mary Sabovic |
| **Sent:** | Monday, March 20, 2017 2:27 PM |
| **To:** | 'jschilling@littler.com' |
| **Cc:** | Ryan VanOsdol; Margherita Albarello; Debra D. Lathom |
| **Subject:** | Manor vs. Copart, Inc., et al.; 17 L 1283 |
| **Attachments:** | Alias Summons.pdf; Cert of Service.pdf; First Amd Complaint.pdf; Interrogatories.pdf; Request to Produce.pdf |

Dear Ms. Schilling:

Attached please find the following documents which are also being served on you via Certified US Mail and Via Messenger:

1. Alias Summons;
2. Copy of First Amended Complaint;
3. Interrogatories;,
4. Request to Produce; and,
5. Certificate of Service.

on behalf of Ryan R. Van Osdol

Mary Sabovic
DiMonte & Lizak, LLC
216 W. Higgins Road
Park Ridge, IL 60068
Tel.: (847) 698-9600 Ext. 257
Fax: (847) 698-9623
msabovic@dimontelaw.com
FORCE UNSECURE

ELECTRONICALLY FILED
3/21/2017 4:03 PM
2017-L-001283
PAGE 2 of 2

# Law DIVISION
## Litigant List

Printed on 03/31/2017

Case Number: 2017-L-001283

## Plaintiffs

| Plaintiffs Name | Plaintiffs Address | State | Zip | Unit # |
|---|---|---|---|---|
| MANOR SARA | | | 0000 | |

Total Plaintiffs: **1**

## Defendants

| Defendant Name | Defendant Address | State | Unit # | Service By |
|---|---|---|---|---|
| COPART CONNECTICUT INC | | 0000 | | |
| COPART, INC. | | 0000 | | |

Total Defendants: **2**

Summons - Alias Summons                                                           (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MANOR SARA
| No. | 2017-L-001283 |

v.

COPART, INC.
Defendant Address:

COPART, INC.

R/A c/o Littler Mendelson, PC

321 N. Clark

Suite 1000

Chicago, IL 60654

☐ SUMMONS ☑ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 _____ ,Chicago, Illinois 60602

☐ District 2 - Skokie ☐ District 3 - Rolling Meadows ☐ District 4 - Maywood

5600 Old Orchard Rd. 2121 Euclid 1500 Maybrook Ave.

Skokie, IL 60077 Rolling Meadows, IL 60008 Maywood, IL 60153

☐ District 5 - Bridgeview ☐ District 6 - Markham ☐ Richard J. Daley Center

10220 S. 76th Ave. 16501 S. Kedzie Pkwy. 50 W. Washington, LL-01

Bridgeview, IL 60455 Markham, IL 60428 Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☐ Atty. No.: 02741

Name: DIMONTE & LIZAK

Atty. for: MANOR SARA

Address: 216 W HIGGINS ROAD

City/State/Zip Code: PARK RIDGE, IL 60068

Telephone: (847) 698-9600

Primary Email Address: rvanosdol@dimontelaw.com

Secondary Email Address(es):

Witness: Thursday, 09 March 2017

DOROTHY BROWN, Clerk of Court

Date of Service:

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

(Area Code) (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Page 1 of 1

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
CALENDAR: Y
PAGE 1 of 22
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| SARA MANOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No.: 2017-L-001283** |
| v. | ) | |
| | ) | |
| COPART, INC., a corporation, and | ) | |
| COPART OF CONNECTICUT, INC., | ) | |
| a corporation, | ) | Jury demanded on all counts |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, Sara Manor ("Ms. Manor"), through her attorneys, Di Monte & Lizak, LLC, files this First Amended Complaint complaining of Defendants, Copart, Inc., d/b/a Copart, a corporation and Copart of Connecticut, Inc. (collectively referred to as "Copart")[1], stating as follows:

### Introduction

1.      In this Complaint, Ms. Manor alleges that Copart discriminated against her because of her pregnancy, her sex, her disability, and her genetic information, in violation of the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* ("the Act"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"), and the Illinois Genetic Information Privacy Act, 410 ILCS 513/1 *et seq.*

---

[1] At this time, it is unclear to Plaintiff whether the legal name of her former employer was Copart, Inc. or Copart of Connecticut, Inc. It appears that Copart of Connecticut, Inc. is a subsidiary of Copart, Inc., which is licensed to do business in Illinois with the Illinois Secretary of State. However, based on the record from the Illinois Department of Human Rights proceeding and the EEOC proceeding, as well as information contained on other documents, it appears that Copart, Inc. may be the legal name of Ms. Manor's former employer. Since it is currently unclear which legal entity was the employer, Plaintiff has named both as defendants in the First Amended Complaint.

1



## The Parties

2. At all relevant times, Ms. Manor, female, was and remains an Illinois citizen and a Kane County resident. At all relevant times, Ms. Manor was a qualified individual with a disability, an individual performing services for remuneration within the State of Illinois, County of Cook, and an "employee" of Copart as defined by the Act, 775 ILCS 5/2-101(A)(1), by Title VII, 42 U.S.C. §2000e(f), and by the ADA, 42 U.S.C. §12101(5).

3. At all relevant times, Copart was a corporation duly organized under the laws of the State of Connecticut, headquartered in Dallas, Texas, and did business in the counties of Cook and Kane, State of Illinois.

4. At all relevant times, Copart was Ms. Manor's "employer" as defined by the Act, 775 ILCS 5/2-101(B), by Title VII, 42 U.S.C. §2000e(b), by the ADA, 42 U.S.C. §12111(5), and by the Genetic Information Privacy Act, 410 ILCS 513/10, and a "covered entity" under the ADA, 42 U.S.C. §12111(2).

## Jurisdiction and Venue

5. Jurisdiction is proper in Illinois pursuant to section 2-209 of the Illinois Code of Civil Procedure, 735 ILCS §§5/2-209(1) and (2), because Copart conducted business within this State and committed the civil rights violations within this State.

6. Venue is proper in Cook County pursuant to section 2-101 of the Illinois Code of Civil Procedure, 735 ILCS §§5/2-101, because it is a county in which the civil rights violations occurred.

## Procedural Background

7. On June 17, 2015, Ms. Manor filed an unperfected charge of discrimination against Copart with the Illinois Department of Human Rights ("Department"). The charge was

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 2 of 22

perfected on July 2, 2015. The Charge was amended on February 18, 2016 ("Amended Charge"). The Amended Charge was cross-filed with the Equal Employment Opportunity Commission as EEOC No.: 21B-2015-01841 ("EEOC Charge").

8.    The Amended Charge alleged that Copart: (a) engaged in disability discrimination by failing to accommodate Ms. Manor based on her pregnancy; (b) forced her to take medical leave because of her pregnancy; (c) forced her to take medical leave because of her sex, female, related to her pregnancy; (d) discharged her because of her pregnancy; and (e) discharged her because of her sex, female, related to her pregnancy, all in violation of the Act and Title VII. A copy of the Amended Charge is attached hereto as Exhibit A.

9.    · On May 24, 2016, the Department dismissed Ms. Manors' Amended Charge for lack of substantial evidence.

10.    On August 22, 2016, Ms. Manor filed a timely Request for Review of the Department's dismissal of the amended charge with the Illinois Human Rights Commission ("Commission").

11.    On October 19, 2016, the Department filed a Response to Request for Review. The Response urged the Commission to vacate the Department's dismissal of the Amended Charge and enter a finding of substantial evidence in favor of Ms. Manor.

12.    On November 15, 2016, the Commission vacated the Department's dismissal of Ms. Manor's Amended Charge, reinstated the Amended Charge, and remanded the matter to the Department for the entry of a finding of substantial evidence.

13.    Thereafter, the Department entered a finding of substantial evidence and issued Ms. Manor a Notice of Substantial Evidence dated November 21, 2016. A copy is attached hereto as Exhibit B.

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 3 of 22

3

14.     Ms. Manor filed this Complaint within 90 days of her receipt of the Notice of Substantial Evidence.

15.     The EEOC issued Ms. Manor a Notice of Right to Sue dated February 10, 2017, for the EEOC Charge.  Ms. Manor filed this First Amended Complaint within 90 days of her receipt of the Notice and therefore this complaint is timely.    A copy of the Notice is attached hereto as Exhibit C.

## Factual Background

16.     Copart is a provider of online vehicle auction and remarketing services in the United States, Canada, and the United Kingdom.

17.     Ms. Manor was employed by Copart for approximately 14 months, beginning in January 2014 and ending in April 2015.

18.     Ms. Manor began her employment with Copart as an Assistant General Manager on or about January 27, 2014.  At all relevant times, Ms. Manor reported to Matt Fogleson, male, Copart's General Manager.

19.     At all relevant times, Ms. Manor met or exceeded Copart's legitimate business expectations.

20.     As Assistant General Manager, Ms. Manor worked with Copart's locations in Wheeling, Illinois, Cook County, and in Chicago Heights, Illinois, Cook County.

21.     Some weeks after her employment began, Copart scheduled Ms. Manor to attend a General Manager Class training program at its Texas headquarters in April 2014.

22.     On March 7, 2014, Ms. Manor told Copart's Regional Human Resource Manager, Christine Arnold, that she was pregnant.  Ms. Manor told Ms. Arnold that although Ms. Manor was considered a high risk pregnancy, her doctor cleared her to attend the scheduled training

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 4 of 22

4

program in Texas, and that she did not anticipate any complications or limitations. Ms. Manor told Mr. Fogelson of her pregnancy later in the day on March 7, 2014.

23.    Copart told Ms. Manor not to attend the scheduled training program even though neither she nor her doctor requested that Ms. Manor be excused from attending.

24.    Ms. Manor's expected date of delivery was August 26, 2014.

25.    In May 2014, Ms. Manor communicated with Ms. Arnold about Copart's maternity leave policy and her ability to take Family and Medical Leave Act leave in connection with the impending birth of her child.

26.    On or about July 3, 2014, Ms. Manor gave Copart a June 24, 2014 note from her obstetrician, Mona Ghosh, M.D., stating that Ms. Manor's expected date of delivery is August 26, 2014, and that she will "need 8-12 weeks off for maternity leave after delivery." Ms. Manor also gave Copart a "Memorandum" requesting approval to take a medical leave of absence from August 26, 2014 through November 24, 2014.

27.    On July 23, 2014, Copart gave Ms. Manor a six-month review giving her an overall performance rating of "meets expectations."  The six-month review says nothing regarding "travel."  The six-month review says nothing about Ms. Manor operating loader equipment.

28.    Ms. Manor gave birth on August 26, 2014.  On or about September 2014, Ms. Manor gave Copart an August 30, 2014 note from her obstetrician, Mona Ghosh, M.D., stating that Ms. Manor had given birth and that she "may return back to work on November 5, 2014."

29.    Ms. Manor returned to work at Copart on November 5, 2014.

30.    On January 13, 2015, Mr. Fogelson told Ms. Manor that she needed to attend the General Manager Class training program scheduled at its Texas headquarters in March 2015.

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 5 of 22

5

31.     Between the time Copart unilaterally decided to excuse Ms. Manor from attending the April 2014 training program and January 12, 2015, Copart did not inform Ms. Manor that a General Manager Class training session was scheduled that she must attend.

32.     Between January 13, 2015 and January 27, 2015, Ms. Manor and Ms. Arnold communicated about Ms. Manor's travel limitations due to her infant's medical condition and need for therapy. Ms. Manor told Ms. Arnold that the infant was diagnosed with torticollis, was undergoing physical therapy, and that Ms. Manor could not "leave her for 2 weeks, and then another 2 weeks." Ms. Manor asked Ms. Arnold if Ms. Manor could make arrangements to have her infant and a caregiver travel to Texas with her and stay in her hotel room so that Ms. Manor could attend to the infant's medical needs. Ms. Manor did not refuse to attend the training session.

33.     On January 27, 2015, Ms. Manor learned that she was unexpectedly pregnant. Ms. Manor had suffered through several miscarriages prior to this time.

34.     On February 2, 2015, Ms. Manor told Ms. Arnold of the pregnancy and provided her with a January 31, 2015 note from her obstetrician, Mona Ghosh, M.D., stating that Ms. Manor "is currently under my care for her high risk pregnancy. She is advised not to travel."

35.     Ms. Arnold told Mr. Fogleson about Ms. Manor's new pregnancy shortly after Ms. Arnold received the news from Ms. Manor.

36.     On February 3, 2015, Ms. Arnold asked Ms. Manor for an updated doctor's note and told Ms. Manor that:

"I am in receipt of your note from yesterday. If you are requesting an accommodation to miss the upcoming [General Manager] class I will need a request from you in writing and a more thorough explanation from your doctor as to what your restrictions are and what you are able to do and not do within your restrictions. ..."

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 6 of 22

6

37.    On February 3, 2015, with knowledge of Ms. Manor's new pregnancy, Mr. Fogleson required Ms. Manor to "train" on a piece of heavy equipment called a "loader." Copart uses loaders to move vehicles about the yard.

38.    Mr. Fogleson never before had asked Ms. Manor to operate a loader. Mr. Fogelson never before had told Ms. Manor that operating a loader was part of her job duties. Operating a loader was not included in Ms. Manor's written job description.

39.    Copart employs individuals whose primary duties include operating loaders.

40.    On February 4, 2015, Ms. Manor provided Copart with medical justification for the requested accommodation. Specifically, Ms. Manor gave Ms. Arnold a February 3, 2015 note from her obstetrician, Mona Ghosh, M.D., reflecting specific travel restrictions and stating that:

"Sara Manor is currently under my care for her high risk pregnancy. Patient had five miscarriages and only one successful pregnancy. Patient cannot operate the loader because of possible vibration and bouncing effects. Patient is also prone to blood clots due to a known genetic condition... She is advised not to travel."

41.    On February 5, 2015, Ms. Arnold responded to the updated doctor's note delivered to her on February 4, 2015, by telling Ms. Manor:

"This note states you have a condition which your doctor indicates makes traveling regardless of pregnancy not advised. Did you make us aware of this doctor advised travel restriction prior to accepting the position? Your signed offer letter indicates that this position requires extensive travel so I'm curious if you made Matt aware that travel was restricted or not advised?"

Minutes later, Ms. Manor told Ms. Arnold:

"Until last night at the doctor, I didn't realize I was at risk to travel when I was not pregnant. I have been travelling on vacations a minimum of 1-2 times a year my entire life. I only found out about the genetic condition about 4 years ago. The way she explained it to me last night at my appointment, is when I am not pregnant I have a 20% chance of those things happening. When you add my high risk pregnancy to the mix it increases my risk by 500% (which I will need to confirm that percentage because it seems really high).

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 7 of 22

7

With that being said, when I signed the contract with Matt, I had no knowledge that I was at risk to travel. I am sure she would be less concerned with me traveling once I am not pregnant. Plus my job description says 20% travel, which to me is not extensive travel.

Can I be blunt? Is Corporate just looking for ways or reasons to fire me."

42.     On February 5, 2015, Ms. Manor told Mr. Fogleson of her second pregnancy. Mr. Fogleson acted as if he already knew of Ms. Manor's second pregnancy.

43.     On February 6, 2015, Mr. Fogleson called Ms. Manor into his office for a conference call with Ms. Arnold. During the call, they told her she must take an involuntary, unpaid, and unsecured leave of absence because Copart would not accommodate her request to postpone her travel to Texas for the General Manager training class and her request not to train on the loader during her pregnancy. Ms. Arnold told Ms. Manor to contact Mr. Fogleson once she is able to work to see if an equal position was available to which she could return.

44.     In response, Ms. Manor told Mr. Fogleson and Ms. Arnold that she is able to work and that the only things she could not do were travel to Texas and operate the loader during her pregnancy. However, Copart refused to engage in a timely, good faith, and meaningful exchange to determine an effective, reasonable accommodation, and, instead, placed Ms. Manor on a forced leave of absence, told her to turn in her company property, and escorted her out of Copart's facility, which also caused Ms. Manor to begin experiencing emotional distress.

45.     On March 31, 2015, Ms. Manor told Ms. Arnold that she had experienced a miscarriage, expected to receive a doctor's release to return to work as of Monday, April 6, 2015, with no restrictions, and that she wished to return to her Assistant General Manager position at Copart.

46.     Later that day, on March 31, 2015, Copart emailed and mailed Ms. Manor a letter stating that her employment will be terminated effective Friday, April 3, 2015.

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 8 of 22

8

47.     Allowing Ms. Manor to take the General Manager training at a later date or remotely through use of Skype or some other Internet connectivity or electronic connectivity did not constitute an undue hardship for Copart. Copart unilaterally excused Ms. Manor from the General Manager training class in April 2014, and never brought up the training class again until mid-January 2015. Further, Ms. Manor could have attended the training session had Copart allowed her to return to work on April 6, 2015, with no restrictions.

48.     Allowing Ms. Manor to forego training on the loader until she delivered her child did not constitute an undue hardship for Copart.

## Legal Standards

### *The Act – Pregnancy, Sex, and Disability Discrimination*

49.     Section 1-102 of the Act states:

(Q)     Unlawful Discrimination. "Unlawful discrimination" means discrimination against a person because of his or her sex, ... disability, ... pregnancy ... as those terms are defined in this Section.

50.     Section 2-102(A) of the Act states that it is a "civil rights violation:

(A)     Employers. For any employer to act with respect to discharge, or conditions of employment on the basis of unlawful discrimination.

(I)     Pregnancy. For an employer to act with respect to discharge, or terms, privileges or condition of employment on the basis of pregnancy, childbirth, or medical or common conditions related to pregnancy or childbirth.

(J)     Pregnancy; reasonable accommodations.

        (1) If after a[n] ... employee ... requests a reasonable accommodation, for an employer to not make reasonable accommodations for any medical or common condition of a[n] ... employee related to pregnancy or childbirth, unless the employer can demonstrate that the accommodation would impose an undue hardship on the ordinary operation of the business of the employer.

        (2) For an employer to deny employment opportunities or benefits to or take adverse action against an otherwise qualified ... employee ... if the denial or adverse action is based on the need of the employer to make reasonable

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 9 of 22

accommodations to the known medical or common conditions related to the pregnancy or childbirth of the ... employee.

(3) For an employer to require a[n] employee ... affected by pregnancy, childbirth, or medical or common conditions related to pregnancy or childbirth to accept an accommodation when the ... employee did not request an accommodation and the ... employee chooses not to accept the employer's accommodation.

(4) For an employer to require a[n] employee ... to take leave under any leave law or policy of the employer if another reasonable accommodation can be provided to the known medical or common conditions related to the pregnancy or childbirth of an employee. No employer shall fail or refuse to reinstate the employee affected by pregnancy, childbirth, or medical or common conditions related to pregnancy or childbirth to her original job or to an equivalent position with equivalent pay ... upon her signifying her intent to return or when her need for reasonable accommodation ceases, unless the employer can demonstrate that the accommodation would impose an undue hardship on the ordinary operation of the business of the employer.

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 10 of 22

51.    Section 2-102(J) of the Act states:

For the purposes of this subdivision (J), "undue hardship" means an action that is prohibitively expensive or disruptive when considered in light of the following factors" and that the "employer has the burden of proving undue hardship."

### *Title VII – Sex and Pregnancy Discrimination*

52.    Section 2000e-2(a) of Title VII provides that it shall be an unlawful employment practice for an employer to "refuse to hire or to discharge any individual or otherwise to discriminate against any individual ... because of ... sex" or to "limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex."

53.    The Pregnancy Discrimination Act of 1978 amends Title VII to prohibit sex discrimination on the basis of pregnancy. Section 2000e-(k) provides that the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions;"

10

### The ADA

54.  Section 12112 of the ADA prohibits discrimination against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment.

55.  Section 12112 of the ADA defines "discriminate against a qualified individual on the basis of disability" to include, without limitation:

(3)    utilizing standards, criteria, or methods of administration –
      (A) that have the effect of discrimination on the basis of disability.

(5)    (A) not making reasonable accommodations to the known physical ...

limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

### The Illinois Genetic Information Privacy Act

56.  Section 410 ILCS 513/25(s) provides that and employer shall not directly or indirectly do any of the following:

(2)    affect the terms, conditions, or privileges of employment, pre-employment application, ... or terminate the employment, because of genetic testing or genetic information with respect to the employee or family member, or information about a request for or the receipt of genetic testing by such employee or family member of such employee;

(3)    limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee because of genetic testing or genetic information with respect to the employee or a family member, or information about a request for or the receipt of genetic testing or genetic information by such employee or family member of such employee; and

(4)    retaliate through discharge or in any other manner against any person alleging a violation of this Act or participating in any manner in a proceeding under this Act.

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 11 of 22

11

## Count I – Sex Discrimination in violation of the Act

57.     For this paragraph 57, Ms. Manor restates and realleges paragraphs 1 – 56, above, as though fully set forth herein.

58.     Similarly-situated male employees with medical conditions were not forced to forego taking training sessions or attending other business meetings because of medical conditions, and were treated more favorably than Ms. Manor. Copart forced Ms. Manor to forego the General Manager training session because of her sex, in violation of the Act.

59.     Similarly-situated male employees with medical conditions were not forced to take medical leaves of absence and were treated more favorably than Ms. Manor. Copart forced Ms. Manor to take a medical leave of absence because of her sex, in violation of the Act.

60.     Similarly-situated male employees with disabilities or medical conditions were provided with reasonable accommodations and were treated more favorably than Ms. Manor. Copart failed to provide Ms. Manor with a reasonable accommodation because of her sex, in violation of the Act.

61.     Copart's conduct was intentional, willful, and in knowing violation of the Act.

62.     As a proximate result of this discrimination, Ms. Manor lost wages, lost employment benefits, suffered severe emotional distress and suffering, and suffered other damages.

WHEREFORE, Ms. Manor respectfully prays for:

a.      An order that Copart cease and desist from discrimination against its employees in the terms and conditions of their employment based on sex;

b.      Back wages;

c.      Front pay;

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 12 of 22

d.     Prejudgment and post-judgment interest;

e.     Emotional distress damages;

f.     Punitive damages;

g.     Reasonable attorneys' fees and costs; and

h.     Such other relief as the Court deems just.

### Count II – Pregnancy Discrimination in violation of the Act

63.     For this paragraph 63, Ms. Manor restates and realleges paragraphs 1 – 62, above, as though fully set forth herein.

64.     Copart violated the Act when it forced Ms. Manor not to attend the General Manager training session in April 2014, and then fired her in April 2015 because she had not attended the training.

65.     Copart violated the Act when it forced Ms. Manor to take an unrequested leave of absence in February 2015.

66.     Copart violated the Act when it failed to engage in a timely, good faith, and meaningful exchange to determine effective reasonable accommodations, and, instead, placed Ms. Manor on a forced leave of absence in February 2015.

67.     Copart violated the Act when it failed to provide Ms. Manor with the reasonable accommodation of deferring travel to Texas for the General Manager training session until after her pregnancy ended.

68.     Copart violated the Act when it required that Ms. Manor train on the loader.  This was a pretext for pregnancy discrimination.

69.     Copart violated the Act when it failed to provide Ms. Manor with the reasonable accommodation of allowing her to defer training on the loader until after her pregnancy ended.

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 13 of 22

13

70.     Copart violated the Act when it failed to return Ms. Manor to her Assistant General Manager position after she advised Copart that she could return to work on April 6, 2015, with no restrictions.

71.     Copart's conduct was intentional, willful, and in knowing violation of the Act.

72.     As a proximate result of this discrimination, Ms. Manor lost wages, lost employment benefits, suffered severe emotional distress and suffering, and suffered other damages.

WHEREFORE, Ms. Manor respectfully prays for:

a.      An order that Copart cease and desist from discrimination against its employees in the terms and conditions of their employment based on pregnancy;

b.      Back wages;

c.      Front pay;

d.      Prejudgment and post-judgment interest;

e.      Emotional distress damages;

f.      Punitive damages;

g.      Reasonable attorneys' fees and costs; and

h.      Such other relief as the Court deems just.

### Count III – Disability Discrimination in violation of the Act

73.     For this paragraph 73, Ms. Manor restates and realleges paragraphs 1 – 72, above, as though fully set forth herein.

74.     Copart's conduct was intentional, willful, and in knowing violation of the Act.

75.     As a proximate result of this discrimination, Ms. Manor lost wages, lost employment benefits, suffered severe emotional distress and suffering, and suffered other damages.

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 14 of 22

WHEREFORE, Ms. Manor respectfully prays for:

a.    An order that Copart cease and desist from discrimination against its employees in the terms and conditions of their employment based on disability;

b.    Back wages;

c.    Front pay;

d.    Prejudgment and post-judgment interest;

e.    Emotional distress damages;

f.    Punitive damages;

g.    Reasonable attorneys' fees and costs; and

h.    Such other relief as the Court deems just.

### Count IV – Sex Discrimination in violation of Title VII

76.    For this paragraph 76, Ms. Manor restates and realleges paragraphs 1 – 75, above, as though fully set forth herein.

77.    Copart's conduct was intentional, willful, and in knowing violation of Title VII.

78.    As a proximate result of this discrimination, Ms. Manor lost wages, lost employment benefits, suffered severe emotional distress and suffering, and suffered other damages.

WHEREFORE, Ms. Manor respectfully prays for:

a.    An order that Copart cease and desist from discrimination against its employees in the terms and conditions of their employment based on sex;

b.    Back wages;

c.    Front pay;

d.    Prejudgment and post-judgment interest;

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 15 of 22

15

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 16 of 22

e.    Emotional distress damages;

f.    Punitive damages;

g.    Reasonable attorneys' fees and costs; and

h.    Such other relief as the Court deems just.

**Count V – Pregnancy Discrimination in Violation of Title VII**

79.    For this paragraph 79, Ms. Manor restates and realleges paragraphs 1 – 78, above, as though fully set forth herein.

80.    Copart's conduct was intentional, willful, and in knowing violation of Title VII.

81.    As a proximate result of this discrimination, Ms. Manor lost wages, lost employment benefits, suffered severe emotional distress and suffering, and suffered other damages.

WHEREFORE, Ms. Manor respectfully prays for:

a.    An order that Copart cease and desist from discrimination against its employees in the terms and conditions of their employment based on pregnancy;

b.    Back wages;

c.    Front pay;

d.    Prejudgment and post-judgment interest;

e.    Emotional distress damages;

f.    Punitive damages;

g.    Reasonable attorneys' fees and costs; and

h.    Such other relief as the Court deems just.

16

### Count VI – Disability Discrimination in violation of the ADA

82.    For this paragraph 82, Ms. Manor restates and realleges paragraphs 1 – 81, above, as though fully set forth herein.

83.    Copart's conduct was intentional, willful, and in knowing violation of the ADA.

84.    As a proximate result of this discrimination, Ms. Manor lost wages, lost employment benefits, suffered severe emotional distress and suffering, and suffered other damages.

WHEREFORE, Ms. Manor respectfully prays for:

a.    An order that Copart cease and desist from discrimination against its employees in the terms and conditions of their employment based on disability;

b.    Back wages;

c.    Front pay;

d.    Prejudgment and post-judgment interest;

e.    Emotional distress damages;

f.    Punitive damages;

g.    Reasonable attorneys' fees and costs; and

h.    Such other relief as the Court deems just.

### Count VII –Forced leave in violation of the Genetic Information Privacy Act

85.    For this paragraph 85, Ms. Manor restates and realleges paragraphs 1 – 84, above, as though fully set forth herein.

86.    Copart violated the Genetic Information Privacy Act when it forced Ms. Manor to take a leave of absence in February 2015, and when it terminated her employment on April 6, 2015.

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 17 of 22

87.     Copart's conduct was intentional, reckless, willful, and in knowing violation of the Genetic Information Privacy Act.

88.     As a proximate result of this discrimination, Ms. Manor lost wages, lost employment benefits, suffered severe emotional distress and suffering, and suffered other damages.

WHEREFORE, Ms. Manor respectfully prays for:

a.      An order that Copart cease and desist from discrimination against its employees in the terms and conditions of their employment based on genetic information;

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 18 of 22

b.      Liquidated damages of $15,000.00 or actual damages, whichever is greater;

b.      Back wages;

c.      Front pay;

d.      Prejudgment and post-judgment interest;

e.      Emotional distress damages;

f.      Punitive damages;

g.      Reasonable attorneys' fees, expert witness fees, and other litigation expenses; and

h.      Such other relief as the Court deems just.

**Count VIII – Termination in violation of the Genetic Information Privacy Act**

89.     For this paragraph 89, Ms. Manor restates and realleges paragraphs 1 – 88, above, as though fully set forth herein.

90.     Copart violated the Genetic Information Privacy Act when it terminated Ms. Manor's employment on April 6, 2015.

91.     Copart's conduct was intentional, reckless, willful, and in knowing violation of the Genetic Information Privacy Act.

18

92.     As a proximate result of this discrimination, Ms. Manor lost wages, lost employment benefits, suffered severe emotional distress and suffering, and suffered other damages.

WHEREFORE, Ms. Manor respectfully prays for:

a.     An order that Copart cease and desist from discrimination against its employees in the terms and conditions of their employment based on genetic information;

b.     Liquidated damages of $15,000.00 or actual damages, whichever is greater;

b.     Back wages;

c.     Front pay;

d.     Prejudgment and post-judgment interest;

e.     Emotional distress damages;

f.     Punitive damages;

g.     Reasonable attorneys' fees, expert witness fees, and other litigation expenses; and

h.     Such other relief as the Court deems just.

**Count IX – Retaliatory forced leave in violation of the Genetic Information Privacy Act**

93.     For this paragraph 93, Ms. Manor restates and realleges paragraphs 1 – 92, above, as though fully set forth herein.

94.     Ms. Manor exercised her rights under the Genetic Information Privacy Act when she informed Copart of her genetic condition, and when she stated to Copart, "Can I be blunt?  Is Corporate just looking for ways or reasons to fire me."

95.     Copart retaliated against Ms. Manor by forcing her to take a leave of absence in February 2015.

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 19 of 22

19

96. Copart's conduct was intentional, reckless, willful, and in knowing violation of the Genetic Information Privacy Act.

97. As a proximate result of this discrimination, Ms. Manor lost wages, lost employment benefits, suffered severe emotional distress and suffering, and suffered other damages.

WHEREFORE, Ms. Manor respectfully prays for:

a.     An order that Copart cease and desist from discrimination against its employees in the terms and conditions of their employment based on genetic information;

b.     Liquidated damages of $15,000.00 or actual damages, whichever is greater;

c.     Back wages;

d.     Front pay;

e.     Prejudgment and post-judgment interest;

f.     Emotional distress damages;

g.     Punitive damages;

h.     Reasonable attorneys' fees, expert witness fees, and other litigation expenses; and

i.     Such other relief as the Court deems just.

**Count X – Retaliatory termination in violation of the Genetic Information Privacy Act**

98. For this paragraph 98, Ms. Manor restates and realleges paragraphs 1 – 97, above, as though fully set forth herein.

99. Ms. Manor exercised her rights under the Genetic Information Privacy Act when she informed Copart of her genetic condition, and when she stated to Copart, "Can I be blunt? Is Corporate just looking for ways or reasons to fire me."

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 20 of 22

100. Copart retaliated against Ms. Manor by terminating her employment on April 6, 2015.

101. Copart's conduct was intentional, reckless, willful, and in knowing violation of the Genetic Information Privacy Act.

102. As a proximate result of this discrimination, Ms. Manor lost wages, lost employment benefits, suffered severe emotional distress and suffering, and suffered other damages.

WHEREFORE, Ms. Manor respectfully prays for:

a. An order that Copart cease and desist from discrimination against its employees in the terms and conditions of their employment based on genetic information;

b. Liquidated damages of $15,000.00 or actual damages, whichever is greater;

b. Back wages;

c. Front pay;

d. Prejudgment and post-judgment interest;

e. Emotional distress damages;

f. Punitive damages;

g. Reasonable attorneys' fees, expert witness fees, and other litigation expenses; and

h. Such other relief as the Court deems just.

Respectfully submitted,

SARA MANOR

BY:     /s/ Margherita M. Albarello
        One of her Attorneys

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 21 of 22

21

Ryan VanOsdol
Margherita M. Albarello
Di Monte & Lizak, LLC
216 Higgins Road
Park Ridge, IL 60068
Firm No. 02741
847-698-9600
rvanosdol@dimontelaw.com
malbarello@dimontelaw.com

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 22 of 22

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
CALENDAR: Y
PAGE 1 of 10
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

# Exhibit A

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.<br>#15M0618.01 | ☒ IDHR<br>☐ EEOC | 2015CF3521 |

### Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (Indicate Mr. Ms. Mrs.)<br><br>Sara Manor | | TELEPHONE NUMBER (Include area code)<br><br>(847) 275-9454 | |
|---|---|---|---|
| STREET ADDRESS | CITY, STATE AND ZIP CODE | | DATE OF BIRTH |
| 1416 N. Madlock Court | Elgin, IL 60123 | | / /<br>M D YEAR |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW).

| NAME OF RESPONDENT<br><br>Copart, Inc. | NUMBER OF EMPLOYEES, MEMBERS<br>15+ | TELEPHONE NUMBER (include area code)<br><br>(770) 554-2152 | |
|---|---|---|---|
| STREET ADDRESS | CITY, STATE AND ZIP CODE | | COUNTY |
| 14185 Dallas Parkway, Ste. 300 | Dallas, TX 75254 | | |

| CAUSE OF DISCRIMINATION BASED ON:<br><br>Pregnancy        Sex | DATE OF DISCRIMINATION<br>EARLIEST (ADEA/EPA) LATEST (ALL)<br><br>2/6/2015 - 4/3/2015<br>☐ CONTINUING ACTION |
|---|---|

ELECTRONICALLY FILED<br>3/9/2017 12:12 PM<br>2017-L-001283<br>PAGE 2 of 10

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

**Technical Amendment**

This Technical Amendment is being made to correct Respondent's legal name.

MFJ/SNR

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME<br><br>THIS 18th DAY OF February 2016<br><br>*Donna M Evans*<br>NOTARY SIGNATURE |
|---|---|
| NOTARY STAMP<br><br>OFFICIAL SEAL<br>DONNA M EVANS<br>NOTARY PUBLIC - STATE OF ILLINOIS<br>MY COMMISSION EXPIRES:05/03/18 | X *Sara Manor*  2/18/16<br>SIGNATURE OF COMPLAINANT      DATE<br>I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

EEO-5 FORM (Rev. 4/12-INT)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.

#15M0618.01

| AGENCY | CHARGE NUMBER |
|---|---|
| ☒ IDHR | 2015CF3521 |
| ☐ EEOC | |

**Illinois Department of Human Rights and EEOC**

| NAME OF COMPLAINANT (Indicate Mr. Ms. Mrs) | TELEPHONE NUMBER (include area code) |
|---|---|
| Sara Manor | (847) 275-9454 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1416 N. Madlock Court | Elgin, IL 60123 | M / D / Y |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (include area code) |
|---|---|---|
| Copart of Connecticut, Inc. d/b/a Copart | | (770) 554-2152 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 14185 Dallas Parkway, Suite 300 | Dallas, TX 75254 | |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| Pregnancy    Sex | 2/6/2015 – 4/3/2015 ☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

I.  A.  **ISSUE/BASIS**

   **FAILURE TO ACCOMMODATE – FEBRUARY 6, 2015, DUE TO MY PREGNANCY**

   B.  **PRIMA FACIE ALLEGATIONS**

   1. I was pregnant at the time of the alleged harm.

   2. My work performance as an assistant general manager met Respondent's expectations. I was hired at the Elgin, IL location on January 27, 2014.

Page 1 of 4

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 3 of 10

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

SUBSCRIBED AND SWORN TO BEFORE ME

THIS 2nd DAY OF July , 2015.

NOTARY SIGNATURE

OFFICIAL SEAL
RAQUEL C GUERRA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/17/16

NOTARY STAMP

X Sara Manor    7/2/15
SIGNATURE OF COMPLAINANT    DATE

I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

EEO-5 FORM (Rev. 11/09-INT)

 

Charge Number: 2015CF3S21
Complainant: Sara Manor
Page 2 of 4

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 4 of 10

3. On February 4, 2015, I submitted my doctor's note with restrictions to Christine Arnold, Human Resource Representative. My restriction consisted of no traveling due to high risk pregnancy. On February 6, 2015, Arnold informed me that Respondent will not be able to accommodate my restriction.

4. Similarly situated non-pregnant employees whose work performance was comparable to mine had their restrictions accommodated.

II.  A.  ISSUE/BASIS

FORCED MEDICAL LEAVE – FEBRUARY 6, 2015, DUE TO MY PREGNANCY

    B.  PRIMA FACIE ALLEGATIONS

1. I was pregnant at the time of the alleged harm.

2. My work performance as an assistant general manager met Respondent's expectations. I was hired on January 27, 2014.

3. On February 4, 2015, I submitted my doctor's note with restrictions to Christine Arnold, Human Resource Representative. On February 6, 2015, Arnold informed me I would be placed on an unsecured, unpaid medical leave until my situation changes because Respondent could not honor my medical restrictions.

4. Similarly situated non-pregnant employees whose work performance was comparable to mine were not forced on unsecured, unpaid medical leave.

III.  A.  ISSUE/BASIS

FORCED MEDICAL LEAVE – FEBRUARY 6, 2015, DUE TO MY SEX, FEMALE, RELATED TO PREGNANCY

    B.  PRIMA FACIE ALLEGATIONS

1. My sex is female.

2. My work performance as an assistant general manager met Respondent's expectations. I was hired on January 27, 2014.

 

Charge Number: 2015CF3521
Complainant: Sara Manor
Page 3 of 4

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 5 of 10

3. On February 4, 2015, I submitted my doctor's note with restrictions to Christine Arnold, Human Resource Representative. On February 6, 2015, Arnold informed me I would be placed on an unsecured, unpaid medical leave until my situation changes because Respondent could not honor my medical restrictions.

4. Male employees with short term disabilities were not forced on unsecured, unpaid medical leave.

IV.  A.  ISSUE/BASIS

DISCHARGE – APRIL 3, 2015, DUE TO MY PREGNANCY

B.  PRIMA FACIE ALLEGATIONS

1. At the time of the alleged harm I was returning to work from pregnancy related disability.

2. My work performance as an assistant general manager met Respondent's expectations. I was hired on January 27, 2014.

3. On March 31, 2015, I submitted my doctor's note to Christine Arnold, Human Resource Representative. The note released me to return to work without restrictions. Arnold informed me via e-mail that my position was filled and no other positions were available. Arnold also indicated that my employment with Respondent was terminated effective April 3, 2015.

4. Similarly situated employees whose work performance was comparable to mine were not discharged.

V.  A.  ISSUE/BASIS

DISCHARGE – APRIL 3, 2015, DUE TO MY SEX, FEMALE, RELATED TO PREGNANCY

B.  PRIMA FACIE ALLEGATIONS

1. My sex is female.

2. My work performance as an assistant general manager met Respondent's expectations. I was hired on January 27, 2014.

 

Charge Number: 2015CF3521
Complainant: Sara Manor
Page 4 of 4

3. On March 31, 2015, I submitted my doctor's note to Christine Arnold, Human Resource Representative. The note released me to return to work without restrictions. Arnold informed me via e-mail that my position was filled and no other positions were available. Arnold also indicated that my employment with Respondent was terminated effective April 3, 2015.

4. Male employees with short term disabilities were not discharged.

DEF/RCG/def

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 6 of 10

# Exhibit B

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 7 of 10

ILLINOIS DEPARTMENT OF

# Human Rights

November 21, 2016

Bruce Rauner, Governor
Janice Glenn, Acting Director

Sara Manor
1416 N. Madlock Ct.
Elgin, IL 60123

Jennifer Irmen
Blair Caravelli Irmen Law
321 N. Clark St., 5th Floor
Chicago, IL 60654

Amy Schaefer Ramsey
Littler Mendelson, PC
321 N. Clark Street, Suite 1000
Chicago, IL 60654

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
CALENDAR: 00

RE: Sara Manor v Copart, Inc., #2015CF3521

## NOTICE OF SUBSTANTIAL EVIDENCE

You have received an Order from the Human Rights Commission ("Commission") vacating the Department's finding and entering a finding of Substantial Evidence.

**Complainant must either:**

1) Within thirty (30) days of receipt of the notice of Substantial Evidence, notify the Department in writing if you wish the Department to file a complaint with the Human Rights Commission ("Commission") pertaining to the allegation(s). Your request should be sent to: Chief Legal Counsel, Illinois Department of Human Rights, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.

The Illinois Human Rights Act ("Act") permits the Department to conduct conciliation to give the parties an opportunity to settle the case before a complaint is filed with the Commission. Conciliation is a process in which a Department Staff Attorney facilitates settlement discussions with both parties via telephone. If you notify the Department to file a complaint with the Commission, I have been designated by the Director to CONCILIATE this case.

All settlement efforts are confidential. If it is determined there is not a reasonable possibility of settlement, within 90 days after receipt of the notice of Substantial Evidence, I will prepare a complaint against Respondent, file it with the Commission and serve notice of such filing on all parties, pursuant to Section 7A-102(F) of the Act. It is then the parties' responsibility to go forward with the case at the Commission.

Or

2) Complainant may (within 90 days) file a complaint with the Commission. If Complainant files a complaint with the Commission, Complainant must also give notice of such filing to the Department.

Or

3) Complainant may commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. The civil action should be filed in the circuit court in the county where the civil rights violation was allegedly committed.

Oral R. Bennett
Staff Attorney
(312) 814-6273

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (866) 740-3953, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.state.il.us/dhr

# Exhibit C

ELECTRONICALLY FILED
3/9/2017 12:12 PM
2017-L-001283
PAGE 9 of 10

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Sara Manor<br>c/o Margherita M. Albarello, Esq.<br>DiMonte & Lizak, LLC<br>Attorney at Law<br>216 West Higgins Road<br>Park Ridge, IL 60068 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 21B-2015-01841 | Daniel Lim,<br>State & Local Coordinator | (312) 869-8082 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

ELECTRONICALLY FILED
3/10/17 12:12 PM
2017-L-001283
PAGE 10 of 13

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Julianne Bowman/ht*                                   February 10, 2017
_____          _____
Julianne Bowman,                                              *(Date Mailed)*
District Director

Enclosures(s)

cc:
**Chief Executive Officer
COPART, INC.
14185 Dallas Parkway
Dallas, TX 75254**

CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| SARA MANOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2017-L-001283 |
| | ) | |
| COPART, INC., a corporation, and | ) | |
| COPART OF CONNECTICUT, INC., | ) | |
| a corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST SET OF INTERROGATORIES TO DEFENDANT COPART, INC.

TO:    Littler Mendelson, P.C.
        Attn: Jennifer Schilling, Esq.
        321 N. Clark St.
        Suite 1000
        Chicago, IL 60654

DEMAND IS HEREBY MADE UPON YOU, pursuant to Supreme Court Rule 213, to answer fully the following interrogatories propounded by Plaintiff, in writing and under oath within twenty-eight (28) days of service hereof upon you.

## INSTRUCTIONS AND DEFINITIONS

1.    In answering these interrogatories, furnish such information as is available to you, not merely such information as is of your own knowledge. This means that you are to furnish information which is known by or in the possession of your agents as well as your attorneys or any agent or investigator for you or your attorneys.

2.    The pronoun "you" refers to the individual or entity to whom these interrogatories are

1



addressed and to its agents, representatives and attorneys.

3. The word "person" includes any natural person, corporation, partnership, firm, limited liability company, joint venture, unincorporated association, proprietorship or any other form of business entity, governmental body or other organization or legal entity.

4. The word "party" shall, if an individual, also include members of his immediate family, and shall, if a corporation or a limited liability company, include its officers, members, managers, directors, managing agents and foreman.

5. As used herein, the term "document" shall mean any and all medium upon which information can be recorded or retrieved, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, including, without limitation, correspondence, communications, emails, memoranda, notes, diaries, statistics, letters, telegrams, minutes, forms, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, inter-office and intra-office communications, notes, recordations and notations of any sort of conversations, telephone calls, bonds, newspapers, phone texts, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, telefax, invoices, worksheets, all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or oral records or representations of any kind, including without limitation, photographs, charts, graphs, microfiche, microfilm, videotapes, recordings, motion pictures, electronic, mechanical or electric records, including without limitation, tapes, cassettes, discs, recordings, and computer memories and the documents, devices, and information necessary to access and understand the information maintained, produced or stored in computerized form.

6.     The term "identify" when used with respect to a document, means provide a description of the type of document, the author or originator of the document, the date the document was written, executed or produced, and the present location and custodian of the document. The term "identify" when used with respect to an individual or entity, means provide the name, address, phone number and email address of the individual or entity.

7.     If any document identified in response to these interrogatories has been lost or destroyed, set forth the content(s) of such document(s), the location of any copies of such document(s), the date of loss or destruction, the name of the person who ordered, authorized and/or is responsible for the loss or destruction.

8.     Where an interrogatory has more than one part, each part should be answered separately so that each answer is clearly understandable.

9.     If you are unable to answer or respond fully to any interrogatory, answer or respond to the extent possible and specify the reasons for your inability to answer or respond in full.

10.     If any answer to any interrogatory, or any portion of it, is incomplete due to an incomplete investigation, or for any other reason, the request should be answered as completely as possible based upon the investigation completed to date, and must also state the nature and extent of the investigation completed to date, any intended future investigation to complete the answer to the interrogatory, and the time when you expect to complete the investigation so that the interrogatory can be answered in full.

11.     Unless a specific interrogatory indicates otherwise, the time period covered by these interrogatories includes the period from January 1, 2013 through the present.

3

12.     These interrogatories are to be regarded as continuing in nature. You are requested to provide, by way of supplementary answers, such additional information and things as may hereafter be obtained by you pursuant to Illinois Supreme Court Rule 213(i).

13.     With respect to any information which may be withheld on the basis of any claim of privilege, including but not limited to attorney-client or work product, a statement shall be provided by counsel for you, signed by one or more of its attorneys, setting forth as to such information:

A.     The nature of the privilege claimed:

B.     The name(s) of any persons privy to the information as to which the privilege is asserted;

C.     The job title or position of every person named in response to (B), above;

D.     The date of the communication;

E.     A brief description of the nature and the general subject matter of the information;

F.     If the privilege claimed is the attorney-client privilege, a representation that the communication pertained to the provision of legal advice by an attorney to a client.

14.     Pursuant to Supreme Court Rule 214, attach to your answers to these interrogatories a copy of all documents that are responsive to each interrogatory.

## INTERROGATORIES

1.     Identify each and every person known or believed by you to have knowledge relevant to the subject matter of this action and a summary of their anticipated knowledge.
**ANSWER**:

2.     Identify all dates on which Sara Manor (f/k/a Sara Flood) ("Ms. Manor") submitted

4

application materials for employment with you. This interrogatory should cover all application submissions from January 1, 2005 through the present. For each date, identify the documents submitted by Ms. Manor and identify any person who received each submission.

**ANSWER**:

     3.    Identify all persons involved in the decision to direct Ms. Manor not to attend the General Manager training class program scheduled for April 2014. For each person, identify his or her role in the decision and each action that person took.

**ANSWER**:

     4.    Identify all reasons why you directed Ms. Manor not to attend the General Manager training class program scheduled for April 2014.

**ANSWER**:

     5.    Identify all documents, as defined above, regarding the decision to direct Ms. Manor not to attend the General Manager training class program scheduled for April 2014.

**ANSWER**:

     6.    Identify all persons involved in the decision to place Ms. Manor on medical leave in February 2015. For each person, identify his or her role in the decision and each action that person took.

**ANSWER**:

     7.    Identify all reasons why you placed Ms. Manor on medical leave in February 2015.

**ANSWER**:

     8.    Identify all documents, as defined above, regarding the decision to place Ms. Manor on medical leave in February 2015.

**ANSWER**:

     9.    Identify all persons involved in the decision to terminate Ms. Manor's employment in March/April 2015. For each person, identify his or her role in the decision and each action that person took.

**ANSWER**:

     10.    Identify all reasons why you terminated Ms. Manor's employment.

**ANSWER**:

     11.    Identify all documents, as defined above, regarding the decision to terminate Ms. Manor's employment.

5

**ANSWER:**

12.    Identify all dates that Copart General Manager Matt Fogelson ("Mr. Fogelson") requested to train Ms. Manor on the loader equipment.
**ANSWER:**

13.    Identify all communications between Copart Regional Human Resource Manager Christine Arnold ("Ms. Arnold") and Mr. Fogelson regarding Ms. Manor's employment, pregnancy, training and/or termination of employment.
**ANSWER:**

14.    Identify all forms of consideration that you provided to Ms. Manor for her employment, including, but not limited to, salary/amount, insurance benefits, retirement plan benefits, vacation days, sick days and other forms of employment benefits provided by you to Ms. Manor during her employment.
**ANSWER:**

15.    Pursuant to Illinois Supreme Court Rule 213(f), provide the name and address of each witness who will testify at trial and all other information required for each witness.

> (a)    **Lay Witnesses:** Identify the name, current address and current phone number of all fact witnesses or lay opinion witness who may testify at trial on behalf of the Plaintiff, and the subject matter of each individual's testimony.

**ANSWER:**

> (b)    **Independent Expert Witnesses:** Identify the name, the address and current phone number of all independent expert witnesses who may testify at trial on behalf of the Plaintiff, and the subject on which the witness will testify and the opinions to be elicited.

**ANSWER:**

> (c)    **Controlled Expert Witnesses:** Identify the name, current address and current phone number of each controlled expert witness who may testify at trial on behalf of the Plaintiff. For each individual identified, provide the following:
> (i)     The subject matter on which the opinion witness is expected to testify;
> (ii)    The conclusions and opinions of the witness and the basis for each conclusion and opinion;
> (iii)   The qualifications of each witness; and
> (iv)    Any reports prepared by the witnesses.

6

**ANSWER:**

16.     Identify the date that Ms. Manor first disclosed to you in 2015 that she was pregnant.
**ANSWER:**

17.     Identify the date in 2015 that Ms. Manor disclosed that she was no longer pregnant and available to return to her position at Copart, and the date that you informed Ms. Manor you were terminating her employment.
**ANSWER:**

18.     Identify all other female Assistant Managers who have been employed by you and have been pregnant during the first two years of their employment. For each individual identified, state whether she was required to attend the General Manager training class and/or train on loaders during her pregnancy.
**ANSWER:**

19.     Identify the person who was hired to replace Ms. Manor as the Assistant Manager at Copart's Elgin office, the date the person was given the Assistant Manager position, the date the person attended the General Manager training class, and all dates that the person was trained on the loader.
**ANSWER:**

20.     Identify all reasons why you could not accommodate Ms. Manor's request to postpone traveling to Texas for the General Manager training class until she no longer was pregnant.
**ANSWER:**

21.     Identify all efforts you made to accommodate Ms. Manor's request for a reasonable accommodation not to train on the loader during her high-risk pregnancy in February 2015.
**ANSWER:**

22.     Identify all efforts you made to accommodate Ms. Manor's request for a reasonable accommodation not to travel to Texas during her high-risk pregnancy in February 2015.
**ANSWER:**

23.     Identify all efforts you made to accommodate Ms. Manor's request for a reasonable accommodation to postpone attending the General Manager training class in 2015 until she was no longer pregnant.
**ANSWER:**

24.     Identify all occasions when you requested Ms. Manor to travel outside of the

Chicagoland area for her employment duties.
**ANSWER:**

     25.     Identify all reasons why postponing Ms. Manor's training on the loader until after her pregnancy constituted an undue hardship.
**ANSWER:**

     26.     Identify all reasons why postponing Ms. Manor's attendance at the General Manager training class until after her pregnancy constituted an undue hardship.
**ANSWER:**

     27.     Identify all male Assistant Manager employees whom you have directed not to attend General Manager training classes, the reason for your direction not to attend, the date each person was advised not to attend, and the date of the training class each person was directed not to attend.
**ANSWER:**

     28.     Identify all male Assistant Manager employees whom you have placed on involuntary medical leave, the date each person was placed on medical leave, and the date, if any, you terminated each person's employment.
**ANSWER:**

     29.     Have you made such inquiry of your agents, servants, employees, representatives, and other persons in your control and have you made such an examination of all documents relating to this matter so as to enable you to answer the interrogatories herein propounded as completely and accurately as you possibly can?
**ANSWER:**

                        Respectfully submitted,
                        SARA MANOR

                        One of her attorneys

Ryan R. Van Osdol
Margherita M. Albarello
Di Monte & Lizak, LLC
216 W. Higgins Road
Park Ridge, IL 60068
847-698-9600

CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

SARA MANOR,                              )
                                         )
    Plaintiff,                       )
                                         )
v.                                       )     Case No. 2017-L-001283
                                         )
COPART, INC., a corporation, and         )
COPART OF CONNECTICUT, INC.,             )
a corporation,                           )
                                         )
    Defendants.                      )

## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT COPART, INC.

TO:    Littler Mendelson, P.C.
        Attn: Jennifer Schilling, Esq.
        321 N. Clark St.
        Suite 1000
        Chicago, IL 60654

      DEMAND IS HEREBY MADE UPON YOU, pursuant to Supreme Court Rule 214, to produce the following documents within twenty-eight (28) days of receipt of this request, to the offices of counsel for Plaintiff.

### DEFINITIONS

    1.    In responding to these requests to produce, furnish such documentation as is available to you, not merely such information as is of your own knowledge. This means that you are to furnish information which is known by or in the possession of your agents as well as your attorneys or any agent or investigator for you or your attorneys.

    2.    The pronoun "you" refers to the individual or entity to whom these interrogatories are

1



addressed and to its agents, representatives and attorneys.

3.     The word "person" includes any natural person, corporation, partnership, firm, limited liability company, joint venture, unincorporated association, proprietorship or any other form of business entity, governmental body or other organization or legal entity.

4.     The word "party" shall, if an individual, also include members of his immediate family, and shall, if a corporation or a limited liability company, include its officers, members, managers, directors, managing agents and foreman.

5.     As used herein, the term "document" shall mean any and all medium upon which information can be recorded or retrieved, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, including, without limitation, correspondence, communications, emails, memoranda, notes, diaries, statistics, letters, telegrams, minutes, forms, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, inter-office and intra-office communications, bonds, newspapers, phone texts, notes, recordations and notations of any sort of conversations, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, telefax, invoices, worksheets, all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or oral records or representations of any kind, including without limitation, photographs, charts, graphs, microfiche, microfilm, videotapes, recordings, motion pictures, electronic, mechanical or electric records, including without limitation, tapes, cassettes, discs, recordings, and computer memories and the documents, devices, and information necessary to access and understand the information maintained, produced or stored in computerized form.

6.     The term "identify" when used with respect to a document, means provide a description of the type of document, the author or originator of the document, the date the document was written, executed or produced, and the present location and custodian of the document. The term "identify" when used with respect to an individual or entity, means provide the name, address, phone number and email address of the individual or entity.

7.     If any document identified in response to these requests has been lost or destroyed, set forth the content(s) of such document(s), the location of any copies of such document(s), the date of loss or destruction, the name of the person who ordered, authorized and/or is responsible for the loss or destruction.

8.     Where a request has more than one part, each part should be responded to separately so that each response is clearly understandable.

9.     If you are unable to answer or respond fully to any request, answer or respond to the extent possible and specify the reasons for your inability to answer or respond in full.

10.     If any response to any request, or any portion of it, is incomplete due to an incomplete investigation, or for any other reason, the request should be answered as completely as possible based upon the investigation completed to date, and must also state the nature and extent of the investigation completed to date, any intended future investigation to complete the answer to the interrogatory, and the time when you expect to complete the investigation so that the request can be answered in full.

11.     Unless a specific request indicates otherwise, the time period covered by these requests includes the period from January 1, 2013 through the present.

3

12.     These requests are to be regarded as continuing in nature. You are requested to provide, by way of supplementary responses, such additional documents and things as may hereafter be obtained by you pursuant to Illinois Supreme Court Rule 213(i).

13.     With respect to any information which may be withheld on the basis of any claim of privilege, including but not limited to attorney-client or work product, a statement shall be provided by counsel for you, signed by one or more of its attorneys, setting forth as to such information:

      A.     The nature of the privilege claimed:

      B.     The name(s) of any persons privy to the communication as to which the privilege is asserted;

      C.     The job title or position of every person named in response to (B), above;

      D.     The date of the communication; and

      E.     A brief description of the nature and the general subject matter of the communication.

14.     As used herein, the terms "relate to" or "relating to" mean consisting of, reflecting, or connected legally, logically, or factually with the matter discussed. Wherever appropriate in this request, the singular form of a word shall be interpreted to include the plural. The terms "and," as well as "or," shall be construed disjunctively or conjunctively to make the request inclusive rather than exclusive.

15.     Pursuant to Supreme Court Rule 214, provide an affidavit of completeness with the responses to the requests to produce.

16.     Where an email is responsive to any of these requests, the email must be produced in its entirety, including all prior emails that are attached as part of a reply or forward.

4

## DOCUMENT REQUESTS

1.     Any and all documents, which relate to or have as their subject matter, communications regarding placing Ms. Manor on medical leave in February 2015 and terminating Ms. Manor's employment with you in March/April 2015, including, but not limited to, inner company emails and memoranda.  An appropriate response to this request should include a search of your email servers for the following terms:

| | | |
|---|---|---|
| • Manor | • "Sara Manor" | • pregnant |
| • pregnancy | • "General Manager training" | • pregnancy |
| • Ghosh | • loader | • doctor |
| • gene | • genetic | |

2.     Any and all documents, which relate to or have as their subject matter, application materials submitted by Ms. Manor for employment with you.  This request should cover all application submissions from January 1, 2005 through the present.

3.     Any and all documents, which relate to or have as their subject matter, your decision to hire Ms. Manor.

4.     Any and all documents, which relate to or have as their subject matter, your decision to direct Ms. Manor not to attend the General Manager training class program scheduled for April 2014.

5.     Any and all documents, which relate to or have as their subject matter, your decision to place Ms. Manor on medical leave in February 2015.

6.     Any and all documents, which relate to or have as their subject matter, your decision to terminate Ms. Manor's employment.

7.     Any and all documents, which relate to or have as their subject matter, Ms. Manor's employee or personnel file.

8.     Any and all documents, which relate to or have as their subject matter, requests from Ms. Manor to you to accommodate her pregnancy in 2015.

9.     Any and all documents, which relate to or have as their subject matter, medical information that Ms. Manor provided to you in accordance with her request to you to accommodate her pregnancy in 2015.

10.     Any and all documents, which relate to or have as their subject matter, female Assistant Managers who have been employed by you and have been pregnant during the first two

5

years of their employment, including any accommodations made for these women, whether these women remain employed by you, and if they are not employed by you, the date their employment was terminated and the reason for termination.

11. All documents, which relate to or have as their subject matter, the decision regarding whom to hire as Ms. Manor's replacement as the Assistant General Manager at your Elgin office.

12. Any and all documents, which relate to or have as their subject matter, why you could not accommodate Ms. Manor's request to postpone traveling to Texas for the General Manager training class until she no longer was pregnant.

13. Any and all documents, which relate to or have as their subject matter, efforts you made to accommodate Ms. Manor's request for a reasonable accommodation not to train on the loader during her high-risk pregnancy in February 2015.

14. Any and all documents, which relate to or have as their subject matter, efforts you made to accommodate Ms. Manor's request for a reasonable accommodation not to travel to Texas during her high risk pregnancy in February 2015.

15. Any and all documents, which relate to or have as their subject matter, efforts you made to accommodate Ms. Manor's request for a reasonable accommodation to postpone attending the General Manager training class in 2015 until she no longer was pregnant.

16. Any and all documents, which relate to or have as their subject matter, occasions when you requested Ms. Manor to travel outside of the Chicagoland area for her employment duties.

17. Any and all documents, which relate to or have as their subject matter, reasons why postponing Ms. Manor's training on the loader until after her pregnancy constituted an undue hardship.

18. Any and all documents, which relate to or have as their subject matter, reasons why postponing Ms. Manor's attendance at the General Manager training class until after her pregnancy constituted an undue hardship.

19. Any and all documents, which relate to or have as their subject matter, Assistant Managers whom you have directed not to attend General Manager training classes.

20. Any and all documents, which relate to or have as their subject matter, Assistant Managers whom you have placed on involuntary medical leave.

21. Any and all documents that you intend to use during deposition, hearings or trial.

6

22.     Any and all documents that you intend to introduce in support of your defense to the causes of action contained in the complaint or any amended complaints.

23.     Any and all documents not previously requested which relate to or have as their subject matter the allegations contained in the complaint or any amended complaints.

Respectfully submitted,
SARA MANOR

One of its attorneys

Ryan R. Van Osdol
Margherita M. Albarello
Di Monte & Lizak, LLC
216 W. Higgins Road
Park Ridge, IL 60068
847-698-9600