**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SARA MANOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17-cv-2585 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| COPART INC. and COPART OF | ) | |
| CONNECTICUT, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' motion to compel arbitration and stay proceedings [14]. For the reasons set forth below, the Court grants Defendants' motion [14], compelling arbitration and staying this litigation in the interim. The parties are instructed to file a joint status report within seven days after the arbitrator issues a final decision, after which time the Court will set this case for a further status hearing.

## I. Background

Plaintiff Sara Manor ("Plaintiff") filed suit against Defendants Copart, Inc. and Copart of Connecticut, Inc. ("Defendants") in Cook County Circuit Court, alleging that Defendants' decision to terminate her violated the Illinois Human Rights Act, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Illinois Genetic Information Privacy Act. See [1-2] at 7 (first amended complaint). Footnote 1 of Plaintiff's first amended complaint explains that Plaintiff is unsure whether Copart Inc. or Copart of Connecticut Inc. is her former employer, and therefore she names both entities as Defendants. *Id.* at 7, n.1.

Defendants removed the action to federal court, see [1], and answered Plaintiff's complaint, see [13]. The answer did not mention any arbitration agreement. A day later,

Defendants filed an amended answer, which purported to reserve Defendants' "right to compel arbitration pursuant to the parties' binding arbitration agreement." [14] at 2. A few days after that, Defendants filed a motion to compel arbitration [15].

According to Defendants' motion to compel, Plaintiff was offered employment with Copart of Connecticut, Inc. in January 2014. [16] at 2. At that time, Copart of Connecticut, Inc.'s parent company, Copart, Inc., provided Plaintiff with a copy of the Copart Employee Handbook ("Handbook"), which contained a description of Defendants' Alternative Dispute Resolution Program ("DRPA") and an acknowledgement form for Plaintiff's signature. See [16-1] at 3, ¶¶ 5-6. Defendants attach what they purport to be the electronically signed acknowledgement form, in which Plaintiff agreed to "be governed by the . . . Handbook." [16-2] at 2-3. The acknowledgment form is also signed by Rory S. Seidens, the Vice President of Human Resources for Copart, Inc. *Id.*

The DRPA included at the back of the Handbook states that Plaintiff "acknowledge[s] that, unless otherwise stated herein, any disputes or claims arising out of [her] employment or the termination of [her] employment shall only be resolved by an arbitrator and that the decision of the arbitrator is final and binding." [16] at 3. More specifically, the DRPA states that it applies "without limitation, to disputes regarding the employment relationship . . . termination . . . and claims arising under the . . . Civil Rights Act of 1964, Americans with Disabilities Act, Family [and] Medical Leave Act, . . . Genetic Information Non-Discrimination Act, and state statutes, if any addressing the same or similar subject matters, and all other state statutory and common law claims." *Id.*

Plaintiff opposes arbitration.

## II.     Legal Standard

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("Act"), "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. "The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983); see *also Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*, 2007 WL 951943, at *2 (N.D. Ill. Mar. 27, 2007) ("Arbitrability is governed by federal law.").  Section 2 of the Act is "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone*, 460 U.S. at 24.  Thus, "[w]hen the parties have agreed to arbitrate some matters pursuant to an arbitration clause, 'the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'"  *Local 73, Serv. Employees Int'l Union, AFL-CIO v. UChicago Argonne, LLC*, No. 10 C 2903, 2011 WL 635862, at *3 (N.D. Ill. Feb. 11, 2011) (quoting *Granite Rock Co. v. Int'l Bhd. Of Teamsters,* 561 U.S. 287, 298 (2010)).  "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Int'l Bhd. of Elec. Workers, Local 21 v. Illinois Bell Tel. Co*., 491 F.3d 685, 687-88 (7th Cir. 2007) (internal quotation marks and citation omitted).

The "gateway" question of "whether the parties are bound by a given arbitration clause" raises a substantive "'question of arbitrability' for a court to decide."  *Howsam v. Dean Witter*

*Reynolds, Inc.*, 537 U.S. 79, 84 (2002). This includes the question of whether an arbitration contract binds parties who did not sign the agreement. See *id.*; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-46 (1995). By contrast, there is a "presumption . . . that the arbitrator should decide" procedural questions of arbitrability, including resolving "'allegation[s] of waiver, delay, or a like defense to arbitrability.'" *Howsam*, 537 U.S. at 84 (quoting *Moses H. Cone*, 460 U.S. at 24-25); see *also id.* ("whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide" (quoting Revised Uniform Arbitration Act of 2000 ("RUAA") § 6, comment 2)); *Zurich American Ins. Co. v. Watts Industries, Inc.*, 415 F. Supp. 2d 887, 890 (N.D. Ill. 2006) (explaining that "procedural" "gateway issues of arbitrability," such as "waiver and estoppel," "are to be referred to an arbitrator for consideration" (citing *Howsam*, 527 U.S. at 84)).

## III.    Analysis

Under the Act, arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate. See 9 U.S.C. § 4; *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909-10 (7th Cir. 1999). In this case, it is undisputed that these three elements are present: Plaintiff, as a condition of employment, signed a written agreement to abide by the Handbook, including its arbitration clause. The arbitration agreement covers "any disputes or claims arising out of [Plaintiff's] employment or the termination of [her] employment," including specifically the Title VII, ADA, Genetic Information Non-Discrimination Act, and related state-law claims alleged in Plaintiff's amended complaint. [16] at 3. And Plaintiff has refused to arbitrate.

Nonetheless, Plaintiff opposes arbitration on three grounds. First, Plaintiff argues that Defendants waived the right to arbitrate by waiting too long to invoke the arbitration agreement. Second, Plaintiff argues that Defendants are equitably estopped from enforcing the arbitration agreement because they failed to timely disclose the arbitration agreement to Plaintiff. Third, Plaintiff argues that neither Defendant has a right to compel arbitration.

Applying the legal standards set forth above, the Court concludes that it cannot resolve Plaintiff's waiver or estoppel arguments. Under governing precedent, these arguments are presumptively for the arbitrator to decide. *Moses H. Cone*, 460 U.S. at 24-25; *Howsam*, 527 U.S. at 84; *Zurich American*, 415 F. Supp. 2d at 890. Plaintiff does not address this case law or argue that the presumption is overcome under the facts of this case.

Plaintiff's remaining argument—that neither Defendant has a right to enforce the arbitration agreement—is for the Court to decide. See *Howsam*, 527 U.S. at 84; *Continental Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005) ("Whether the parties have agreed to arbitrate is a question normally answered by the court rather than by an arbitrator. The issue is governed by state law principles governing contract formation.").

Plaintiff argues that Copart, Inc. cannot enforce its Handbook's arbitration clause against Plaintiff, because Copart, Inc. claims that it is not Plaintiff's employer. However, regardless of whether Copart, Inc. is Plaintiff's employer, Plaintiff agreed as a condition of her employment (whether with Copart, Inc. or with Copart of Connecticut, Inc.) to abide by Copart Inc.'s Handbook and to arbitrate "any disputes or claims arising out of [her] employment or the termination of [her] employment," including Title VII and ADA claims and claims under the Genetic Information Non-Discrimination Act. [16] at 3. Relatedly, Plaintiff argues that any agreement between Copart, Inc. and Plaintiff would fail for lack of consideration since Copart,

Inc. is not her employer. But Plaintiff's and Copart, Inc.'s agreement "to be bound by the outcome of the arbitration is enough, in the Seventh Circuit, to defeat allegations that the agreement in question is invalid due to a lack of consideration." *Safranek v. Copart, Inc.*, 379 F. Supp. 2d 927, 929 (N.D. Ill. 2005); see *also Koveleskie v. SBC Capital Markets, Inc*., 167 F.3d 361, 368 (7th Cir. 1999). Plaintiff agreed to arbitrate its claims against Copart, Inc. in exchange for employment, and Copart, Inc. in return agreed to arbitrate its claims against Plaintiff. See [16-1] at 9 (agreeing that "[Plaintiff is] not entitled to go to court and have a judge or a jury decide whether my claim against the Company is valid" and "[l]ikewise, Copart[, Inc.] is not entitled to go to court and have a judge or jury decide whether its claim against [Plaintiff] is valid").

Finally, Plaintiff argues that Copart of Connecticut, Inc. cannot enforce the Handbooks' arbitration clause because the Handbook is Copart Inc.'s. Assuming that Copart of Connecticut, Inc. should be considered a nonsignatory to the Handbook's agreement to arbitrate, under both Illinois contract law and federal law "a nonsignatory may be bound to the arbitration agreements of others" under "the third-party beneficiary doctrine." *Continental Cas. Co.*, 417 F.3d at 734 (applying Illinois law); see also *ChampionsWorld, LLC v. U.S. Soccer Federation, Inc*., 487 F. Supp. 2d 980, 987–88 (N.D. Ill. 2007) ("federal law contemplates nonsignatory enforcement of arbitration agreements where enforcement is sought by an intended third-party beneficiary" (citing *IDS Life Ins. Co. v. SunAmerica, Inc*., 103 F.3d 524, (7th Cir. 1996))). "For an intended third-party beneficiary to enforce contract terms, the liability of a promisor to the beneficiary must affirmatively appear from the language of the instrument and the contract must be made for the direct benefit of the third party," but it is "not necessary that the beneficiary be identified by name in the contract," so long as it is "identified in some manner, for example, by describing the

class to which it belongs." *Continental Cas. Co.*, 417 F.3d at 734 (internal quotation marks and citations omitted).

Here, Copart Inc.'s Handbook defines "Company" to include its subsidiaries, and requires Plaintiff to arbitrate any claim against the Company. [16-1] at 9. Plaintiff agreed to abide by the Handbook as a condition of employment (either with Copart, Inc. or Copart of Connecticut, Inc.). Copart of Connecticut, Inc., as a subsidiary of Copart, Inc. "is thus an intended third-party beneficiary" of the Handbook's arbitration clause "and can enforce it." *ChampionsWorld*, 487 F. Supp. 2d at 987-88 (status of soccer association as a nonsignatory to match agent license agreement between promoter and soccer federation did not preclude association from enforcing agreement's arbitration provision as against promoter's claims, where promoter agreed to adhere to federation's arbitration framework, and license application specifically listed "national associations" as a class entitled to arbitration with licensed applicants, making association an intended third-party beneficiary of the license agreement).

The Court therefore concludes that Plaintiff is required to arbitrate her dispute with Defendants. The Court will stay this case while the arbitration is pending. See 9 U.S.C. § 3 (providing for stay while arbitration is pending); *Tinder v. Pinkerton Security*, 305 F.3d 728, 733 (7th Cir. 2002); *Allscripts Healthcare, LLC v. Etransmedia Technology, Inc.*, 188 F. Supp. 3d 696, 699 (N.D. Ill. 2016).

**IV.    Conclusion**

For the foregoing reasons, the Court grants Defendants' motion [14], compelling arbitration and staying this litigation in the interim. The parties are instructed to file a joint status report within seven days after the arbitrator issues a final decision, after which time the Court will set this case for a further status hearing.

Dated: October 24, 2017

Robert M. Dow, Jr.
United States District Judge